**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**MARUTI.COM, et al.** :
**Plaintiffs,** :
:
**v.** : **CIVIL NO. L-03-1478**
:
**MARUTI UDYOG LIMITED, et al.** :
**Defendants.** :

## MEMORANDUM

This is a dispute over the domain name "maruti.com." The plaintiff, Rao Tella ("Tella"), is a computer engineer and consultant who develops web sites for personal and business use.[1] Although at one point he only used the maruti.com site to post photos of a nephew named Maruti,[2] he later converted the site to a search engine portal.[3] Tella earned revenue from the site through an affiliated website that paid him every time someone clicked through maruti.com to reach the affiliated website.[4]

The defendant, Maruti Udyog Limited ("Maruti"), is incorporated under the laws of India and has its principal place of business in India. It has registered the MARUTI mark under the trademark laws of India and 19 other countries.[5] In operation since 1976, Maruti manufactures and sells its lines of passenger cars in India, and exports its products to 70 countries.[6] Maruti

---

[1] Pl.'s Mot. for Partial Summ. J. at 1. (Docket No. 67). Tella was born in India and moved to the United States around 1991. He is now a United States citizen. Aff. of Srinivasa Rao Tella, at 10. (Def.'s Ex. 2 attached to the Affidavit of Lara N. Gelbwasser ("Gelbwasser Aff.")).

[2] According to Tella, Maruti is also the name of an Hindu god.

[3] Id. The website is not in use for any purpose at the moment.

[4] Id. It does not appear that Tella has attempted to register "MARUTI" as a trademark in the United States.

[5] Amend. Countercl. ¶ 6 (Docket No. 25).

[6] Def.'s Opp. at 5 (Docket No. 68).

does not, however, sell its vehicles in the United States, and lacks a registered trademark here.[7] Maruti maintains no office or point-of-sale locations in the United States, and has no agents here. Maruti's primary website is marutiudyog.com.[8]

The defendant Bulkregister.com, Inc. ("Bulkregister") is a domain name registrar with whom Tella registered "maruti.com." In conformity with industry practice, Tella's registration agreement with Bulkregister provides that all domain name disputes must be resolved according to the Uniform Domain Name Dispute Resolution Policy ("UDRP").

On January 31, 2003, Maruti filed an arbitral complaint with the World Intellectual Property Organization ("WIPO"),[9] alleging that Tella's domain name infringed Maruti's trademark, "MARUTI." WIPO ruled in favor of Maruti and ordered that the domain name be transferred to Maruti.[10]

Tella alleges that he is the rightful owner of the domain name "maruti.com." On May 20, 2003, Tella filed the instant case, seeking declaratory and injunctive relief under §1114(2)(D)(v) of the Lanham Act,[11] as amended by the Anticybersquatting Consumer Protection Act ("ACPA"). Tella asks the Court to declare that his use of the domain name maruti.com is

---

[7] Id. at 1,5.

[8] An Internet user who typed "maruti" into a search engine would get a results list with several websites for Maruti and its cars. These websites provide information about the cars, locations of sales offices, and contact information for queries.

[9] WIPO is an UDRP-approved arbitrator.

[10] The WIPO decision has no collateral estoppel or *res judicata* effect and is entitled to no deference from the district court. See Barcelona.com, Inc. v. Excelentisimo Ayuntiemento de Barcelona, 330 F.3d 617, 626 (4th Cir. 2003). Under the UDRP, "a party aggrieved by the dispute resolution process" may file a court challenge. Id. at 621.

[11] 15 U.S.C. § 1051 *et seq.*

lawful.[12]

On September 7, 2004, Maruti filed an Amended Counterclaim, alleging that Tella is a "cybersquatter" violating 15 U.S.C. § 1125(d) of the ACPA. Maruti contends that Tella registered the domain name "maruti.com" with a bad faith intent to profit from the use of its mark. Tella moved to dismiss the Amended Counterclaim, arguing that Maruti had no claim under the Lanham Act because its mark is not "used in commerce" in the United States, and, therefore, is not entitled to the Act's protection. The Court denied the motion to dismiss, without prejudice to filing a motion for summary judgment at the end of discovery. (Docket No. 29). The Court issued a scheduling order, and the parties proceeded to full-blown discovery. At the close of discovery, Tella filed a renewed Motion for Partial Summary Judgement on the Amended Counterclaim.[13] Again, he raised the argument that Maruti is not entitled to the anticybersquatting protections of the ACPA because Maruti does not use its mark "in commerce" in the United States.

This Court's jurisdiction to adjudicate domain name disputes comes from the Lanham Act. There is no "common law" of the Internet, and the rights of the defendant are governed by the ACPA, which amended the Lanham Act. There is no other treaty or law that is relevant in this case. Although the registration agreement with Bulkregister requires disputes to be resolved under the UDRP, that contract does not expand the set of rights and obligations created by the

---

[12] 15 U.S.C. § 1114(2)(D)(v) "authorizes an aggrieved domain name registrant to 'file a civil action to establish that the registration or use of the domain name by registrant is not unlawful under this chapter.'" Barcelona.com, 330 F.3d at 627 (citing 15 U.S.C. § 1114(2)(D)(v)). This provision is designed to prevent what is called "reverse hijacking" or overreaching by mark owners. Id. at 625 n.1.

[13] Plaintiffs filed a motion for partial summary judgment during the course of discovery, which the Court denied as premature. (Docket No. 55).

Lanham Act.

The equities clearly favor Maruti because Tella appears to be a cybersquatter, with a history of registering websites containing the names of trademarked companies.[14] To decide this motion for partial summary judgment, however, the Court does not apply equitable principles. Instead, the Court must probe the limits of the Lanham Act to determine what protections, if any, it affords to a foreign company that does not sell its goods "in commerce" in the United States. For the reasons stated herein, the Court will GRANT the Motion for Partial Summary Judgment.

**I. Whether Maruti has a valid trademark entitled to protection[15]**

To establish a *prima facie* case under the anticybersquatting statute, Maruti must prove that: (i) it has a valid trademark entitled to protection; (ii) its mark is distinctive or famous; (iii) Tella's domain name is identical or confusingly similar to, or dilutive of, Maruti's mark, and (iv) Tella had registered the domain name with (v) bad faith intent to profit. DaimlerChrysler v. The Net, Inc., 388 F.3d 201, 204 (6th Cir. 2004).

The issue, for the moment, is whether Maruti has "a valid trademark entitled to protection." See Retail Services Inc. v. Freebies Publishing, 364 F.3d 535, 549 (4th Cir. 2004) ("a prerequisite for bringing a claim under the ACPA is establishing the existence of a valid

---

[14] Tella has lost domain name disputes with America Online, Onida (an Indian appliance manufacturer), and Hero Honda (a motorcycle manufacturer in India that is a joint venture between Honda and an Indian company named Hero). Amend. Countercl. ¶ 11. The Court also notes that in the instant case, he tried to sell maruti.com to Maruti for $480,000. Amend. Countercl. ¶ 19.

[15] The Court notes that the issue here is as much jurisdictional as a determination of the substantive merits of the case. If Maruti's mark is not used in the commerce of the United States, then it does not get Lanham Act protection, and the Court does not have jurisdiction over the counterclaim.

trademark and ownership of that mark.").[16]

Under the "territoriality principle," "trademark rights exist in each country solely according to that country's statutory scheme," and foreign use of a foreign trademark creates no rights under United States law. See Person's Co., Ltd. v. Christman, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990).

A trademark, however, need not be federally registered in order to qualify for protection under the ACPA. The Fourth Circuit requires that "an *unregistered* trademark satisfy two requirements if its owner is to have a protectible interest in the trademark: The mark must be used in commerce, *see* 15 U.S.C. § 1051, ... and it must be distinctive." Internat'l Bancorp, LC v. Societe des Bains de Mer, 329 F.3d 359, 363 (4th Cir. 2003); see also DaimlerChrysler, 388 F.3d at 205 ("Rather, 'the general principles qualifying a mark for registration under [the act] are for the most part applicable in determining whether an unregistered mark is entitled to protection.'")(citing Two Pesos Inc. v. Taco Cabana, 505 U.S. 763, 768 (1992)).

The Lanham Act, of which the ACPA is a part, requires a trademark registrant to verify that its mark "is in use in commerce." 15 U.S.C. § 1051(a)(3)(C). "'Commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.[17]

The crux of this matter, therefore, is whether Maruti's mark is used "in commerce." The

---

[16] Maruti argues that the Lanham Act's "use in commerce" requirement is not a requirement for bringing an ACPA claim. Def.'s Opp. at 13-16. Maruti believes that the Fourth Circuit misread the statutes in Barcelona.com, when it held that the Lanham Act applies to actions under the ACPA. See Barcelona.com, 330 F.3d at 627-28. Maruti's tortured reading of the Lanham Act and the ACPA is unavailing. Not only is this Court bound by the precedent, it agrees with the Fourth Circuit's reasoning.

[17] Indeed, the regulation of interstate commerce is the Constitutional basis of the Lanham Act. 15 U.S.C. § 1127 ("The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce").

Fourth Circuit has determined that "'commerce' under [the Lanham Act] is coterminus with that commerce which Congress may regulate under the Commerce Clause of the United States Constitution." Societe des Bains de Mer, 329 F.3d at 363-64.

Although Maruti does not sell its cars in the United States, the Fourth Circuit has held that "use in commerce" can include foreign trade. Id. at 365 (a foreign company's unregistered trademark may be protected under the Lanham Act if its services were rendered in "foreign trade," because Congress has authority over foreign trade).[18] The commercial intercourse that constitutes "foreign trade" need not take place in the United States, but it has to be of the type that Congress has the authority to regulate. Id. at 368. In other words, it must "involve transactions between United States citizens and the subject of a foreign nation." Id. at 369.

Turning to the facts of this case, Maruti cannot be seen as having a trademark that is "used in commerce" in the United States, or in foreign trade with the United States. Maruti's mark applies to its cars, which are goods,[19] and § 1127 clearly requires that the goods be "sold or

---

[18] Societe des Bains de Mer involved trademarked *services* (casino services). "Services" and "goods" have different statutory requirements to meet the definition of "use in commerce" under 15 U.S.C. § 1127. The full text of the "use in commerce" definition is as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce–
>
> (1) on goods when–
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

[19] Maruti refers to its mark being attached to its "products;" products are goods, not services.

transported in commerce." Maruti's cars are not sold or transported in the commerce of the United States, not even the foreign commerce of the United States. Maruti has not shown that a single one of its cars has ever been shipped to the United States, and can only offer that two American Embassies have bought a total of three cars from Maruti.[20]

Furthermore, Maruti's website is not a "point-of-sale"; a United States' customer cannot log on and order a car to be delivered to him in the United States.[21] According to Maruti, several persons living in the United States have entered contact information and made inquiries through that link.[22] Maruti has provided no evidence, however, that anyone living in the United States has bought a Maruti car.

Maruti contends that it has conducted business with United States corporations, in the form of a joint venture with Ford *in India*,[23] and exploring possible investments in Maruti by

---

[20] Maruti claims that it has sold three cars to the American Embassies in Bangladesh and Nepal. Affidavit of Rajiv Khanna ¶ 10 ("Khanna Aff.").
The instant case must be distinguished from the specific factual situation in Societe des Bains de Mer, in which the Fourth Circuit addressed the protected marks for *services* used in commerce. See n. 18 *supra*. The instant case is, therefore, similar to Person's, in which the Federal Circuit found that the fact that United States customers bought a product in Japan did not fulfill the "use in commerce" requirement. 900 F.2d at 1568-69.

[21] Maruti's website displays photographs of its cars, with accompanying information about the vehicles. A link, "planning to buy a car," allows visitors to enter their contact information. Def's Opp. at 6. The Court has viewed the website *sua sponte*, and notes that there is no opportunity to enter contact information for cities and states outside of India. Nevertheless, Maruti has provided a list of ten persons living in the United States who have entered contact information at that site. Khanna Aff., Ex. 15.

[22] Id.

[23] Khanna Aff., Ex. 5. This venture is for the purpose of manufacturing goods for the "Indian market." Def.'s Opp at 6.

United States corporations.[24] These business relationships, however, do not qualify as "goods sold or transported" in the commerce of the United States, as the Act requires.

## II. Whether Maruti has a "famous" mark

Maruti offers that if a mark is "famous," it can bypass the "use in commerce" requirement of the Lanham Act. The famous marks doctrine is a "controversial" exception to the territoriality principle: "foreign marks are protectable even without use or registration within the United States, where the mark . . . is so 'well known' or 'famous' as to give rise to a risk of consumer confusion if the mark . . . is used subsequently by someone else in the domestic marketplace." De Beers LV Trademark, Ltd. v. DeBeers Diamond Syndicate, Inc., No. 04-CIV-4099, 2005 WL 1164073 at *7 (S.D.N.Y. May 18, 2005) (internal citations omitted).

Only two cases, one authored by the Ninth Circuit and the other by the Southern District of New York, have recognized the existence of the famous marks doctrine. In both cases, the court failed to issue a definitive ruling, concluding that greater factual exposition of the fame of the mark was needed.[25]

---

[24] Through the Indian government, a major stakeholder, Maruti offered equity shares in the company to American investors at road shows in New York, Boston, and San Francisco. Khanna Aff. ¶ 12. Maruti's Exhibit 16, attached to the Affidavit of Rajiv Khanna, purports to be a chart showing that there are United States investors in Maruti. Maruti's papers, however, do not explain the chart.

[25] See Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc., 391 F.3d 1088, 1094, 1096-97 (9th Cir. 2004). The Ninth Circuit devised a two-part test to determine when the famous marks doctrine applied. First, the district court must determine whether the mark satisfies a "secondary meaning test." Second, there must be a preponderance of evidence showing that a "*substantial* percentage of consumers in the relevant American market is familiar with the foreign mark." Id. at 1098. The Ninth Circuit remanded for a determination on the second prong.

In De Beers, The district court did not define the test that should be applied, giving the parties the opportunity to brief the level of fame required. The district court simply denied a motion to dismiss, on the basis of a recognition of the famous marks doctrine. The Second Circuit has, thus far, declined to decide whether there is a famous marks doctrine. Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 465 (2d Cir. 2005) (the court did not reach the issue because the United States embargo against Cuba precludes recognizing their trademark rights in cigar brand names).

This Court will decline to apply the famous marks doctrine to the instant case. The Court reaches this decision after considering several factors. First, the Fourth Circuit has never recognized the doctrine.[26] Second, there is disagreement over what the doctrine requires. The Ninth Circuit, for example, says that there must be "secondary meaning" *and* "a substantial percentage of American customers familiar with the mark." See Grupo Gigante, 391 F.3d 1098. The Southern District of New York seems to require only "secondary meaning." See De Beers, 2005 WL 1164073 at *8.

Finally, under either formulation, Maruti has failed to offer evidence from which a reasonable jury could conclude that MARUTI has obtained a secondary meaning in the United States. Secondary meaning "is the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." Perini Corp. v. Perini Constr., 915 F.2d 121, 125 (4th Cir. 1990).

A court must weigh several relevant factors when determining whether a mark has secondary meaning: (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. Id. (citing Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985)). Although a proponent need not satisfy each factor in order to show secondary meaning, Maruti has presented scant evidence on

---

[26] Dissenting in Societe des Bains de Mer, Judge Motz notes that the famous marks doctrine is applied so rarely that "its viability is uncertain." 329 F.3d at 389 n.9 (Motz, J. dissenting.)

this question, despite having had several months to conduct extensive discovery.[27] Maruti offers that it has advertised in "prominent newspapers and magazines with widespread reach and circulation," without naming these papers or offering evidence that Maruti has advertised in the United States.[28] Maruti also provides a copy of one Wall Street Journal article, dated May 31, 2005, that mentions Maruti[29] These two pieces of information fall far short of creating a genuine issue of material fact as to whether Maruti has secondary meaning in the eyes of the American public.

## III. Effect of Paris Convention Article 6*bis*

Maruti also argues that the Paris Convention Article 6*bis*,[30] of which India and the United States are signatories, requires the Court to find that a famous mark triggers Lanham Act protection. For this proposition, Maruti cites J. McCarthy on Trademarks and Unfair Competition, § 29:61 (4th ed. 2004).[31]

---

[27] Maruti knew that the Court's jurisdiction was at issue, because Tella filed a motion to dismiss on this very question soon after Maruti filed its counterclaim.

[28] Khanna Aff. ¶ 10.

[29] Cris Prystay, Ford, GM shift tactics as India revs up, Wall Street Journal, May 31, 2005, at B1. Gelbwasser Aff., Ex. 1.

[30] Paris Convention for the Protection of Industrial Property, July 14, 1967, 21 U.S.T. 1628. The pertinent section of Article 6*bis* reads:

> (1) The countries of the Union undertake, ex officio if their legislation so permits, or at the request of an interested party, to refuse or to cancel the registration, and to prohibit the use, of a trademark which constitutes a reproduction, an imitation, or a translation, liable to create confusion, of a mark considered by the competent authority of the country of registration or use to be well known in that country as being already the mark of a person entitled to the benefits of this Convention and used for identical or similar goods. These provisions shall also apply when the essential part of the mark constitutes a reproduction of any such well-known mark or an imitation liable to create confusion therewith.

[31] Reference is made to this treatise in De Beers as well. 2005 WL 1164073 at * 8.

While the Lanham Act provides for the enforcement of United States treaty obligations,[32] the Fourth Circuit appears to take a narrower view of the effect of this provision than does McCarthy. In Barcelona.com the Fourth Circuit said that the principles of the Paris Convention do not exceed the rights conferred by the Lanham Act. 330 F.3d at 628 (citing Scotch Whiskey Ass'n v. Majestic Distilling Co., 958 F.2d 594, 597 (4th Cir. 1992); Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.) Inc., 252 F.3d 1274, 1278 (11th Cir. 2001)). Accordingly, the Court will not apply Article 6*bis*.

**IV. Conclusion**

The Court recognizes that in a world where the Internet transcends borders, the strictures of the Lanham Act create a an arbitrary border demarcation. Tella's pattern of conduct is of dubious propriety.[33] Nevertheless, Maruti does not have standing to bring its claim under the ACPA amendment to the Lanham Act. Accordingly, Tella's motion for partial summary judgment must be granted.

Neither party moved for summary judgment on Tella's claim. It may be that the Court's ruling on the counterclaim requires that it grant summary judgment to Tella on his claim. The parties must provide additional briefing on this question, specifically addressing the law that the Court must apply with regard to a claim under § 1114(2)(D)(v) and whether there are equitable principles, such as unclean hands, that apply. On or before September 18, 2006, Tella shall file a Motion for Summary Judgment on his claim. Maruti shall have two weeks thereafter to file a

---

[32] 15 U.S.C. § 1126.

[33] Without reference to the jurisdictional threshold that Maruti cannot pass, the WIPO's arbitration decision is persuasive that Tella is a "cybersquatter." The WIPO's decision, however, is not binding on this Court. Barcelona.com, 330 F.3d at 626 (the WIPO decision is not entitled to any deference).

Response. Then Tella shall have one week to file a Reply.

Dated this 15th day of August, 2006.

/s/
Benson Everett Legg
Chief Judge